JUDGMENT: REVERSED.
{¶ 1} Defendant-appellant, Marc Glassman, Inc. ("MGI"), appeals the Ohio Board of Tax Appeal's ("BTA") affirmance of the decision of plaintiff-appellee, William W. Wilkins, Tax Commissioner of Ohio ("Tax Commissioner"). For the reasons set forth below, we reverse.
 {¶ 2} The Department of Taxation conducted an audit of MGI's purchases made during January, 1999 through September 30, 2001. As a result of the audit, the Department assessed use taxes upon MGI for certain transactions.
 {¶ 3} MGI filed a petition for reassessment for a portion of the assessment. More specifically, MGI objected to the imposition of use tax on the transactions with NDC Health ("NDC") and Envoy Corporation ("Envoy").[1] The Tax Commissioner, in his Final Determination, found the services purchased by MGI to be taxable "electronic information systems" pursuant to R.C. 5739.01(B)(3)(e).
 {¶ 4} On January 14, 2005, MGI appealed the Tax Commissioner's Final Determination to the BTA. The BTA held an evidentiary hearing on June 29, 2005. At the hearing, MGI submitted documents from NDC explaining its role in the disputed service transactions. Additionally, Brian Kendro, Vice President of MGI, testified and explained the process MGI undergoes, on behalf of a customer, to seek authorization through NDC to fill a prescription.
 {¶ 5} In an ordinary transaction, a Marc's customer presents the pharmacist with a prescription and his or her insurance card. The information card usually contains, among other information, the insurance company name, the plan name, the member name and the member number. The pharmacist, for the customer, enters the pertinent information into a computer terminal owned or leased by MGI.
 {¶ 6} The information inputted by the pharmacist is transmitted to a frame relay network via a private dedicated communication line. From here, the information is routed directly to NDC.
 {¶ 7} NDC, which is connected to multiple insurance companies through various individual private communication lines, then routes the information received from MGI directly to the appropriate insurance company.
 {¶ 8} Upon receipt of the information, the insurance company processes the request and decides whether to authorize the prescription. Thereafter, the company sends its response to NDC. If the prescription is approved for the customer, an authorization number is sent to NDC along with the co-pay amount and eligibility.
 {¶ 9} NDC then routes this information back to MGI via the dedicated private communication line. The entire transaction, beginning with the pharmacist inputting the information into the MGI computer, takes an average of four seconds.
 {¶ 10} NDC charges MGI a per transaction fee for its service, as well as a monthly fixed charged for a private communication channel between MGI and NDC.
 {¶ 11} On January 20, 2006, the BTA issued a Decision and Order, finding that MGI used "electronic information services" to determine the insurance eligibility, amount of co-pay, and an authorization number of those customers seeking to purchase prescription items.
 {¶ 12} MGI now appeals the BTA's ruling and submits four assignments of error for our review. In the interests of convenience, we will address MGI's first and second assignments of error collectively.
 {¶ 13} MGI's first assignment of error states:
 {¶ 14} "The Board's decision is contrary to the evidence and is unlawful because MGI did not receive or acquire data from NDC or Envoy, a necessary finding for the Tax Commissioner to assess a use tax under R.C. 5739.01(B)(3)(e) as an electronic information services as described in R.C. 5739.01(Y)(1)(c)."
 {¶ 15} MGI's second assignment of error states:
 {¶ 16} "The Board's decision is contrary to the evidence and is unlawful because MGI did not have access to computer equipment of NDC or Envoy for the purpose of acquiring data stored in or accessible to such equipment, a necessary finding for the Tax Commissioner to assess a use tax under R.C. 5739.01(B)(3)(e) as an electronic information services as required in R.C. 5739.014(Y)(1)(c)."
 {¶ 17} The standard of review applicable to BTA rulings is whether the decision is unreasonable or unlawful. See Galvin v. Masonic ToledoTrust (1973), 34 Ohio St.2d 157, 296 N.E.2d 542; Cincinnati NatureCenter v. Bd. of Tax Appeals (1976), 48 Ohio St.2d 122, 357 N.E.2d 381. For the following reasons, we find that the decision of the BTA is unlawful and unreasonable.
 {¶ 18} In the instant matter, the Tax Commissioner assessed MGI for certain payments made to NDC for insurance authorizations because he found that the services rendered by NDC fell within the class of transactions made taxable as sales of "electronic information systems" under R.C. 5739.01(B)(3)(e). For the following reasons, we reverse.
 {¶ 19} R.C. 5741.02(A) imposes a tax on "the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." The consumer that benefits from the service is responsible for use tax on the price of that service. R.C. 5741.02(B). Under R.C. 5741.01(M) and 5739.01(X), the only services taxable in Ohio are those proffered in R.C. 5739.01(B)(3).Ameritech Publishing, Inc. v. Wilkins, 111 Ohio St.3d 114,2006-Ohio-5337.
 {¶ 20} R.C. 5739.01(B) states, in pertinent part, as follows:
 {¶ 21} "(B) `Sale' and `selling' include all of the following transactions for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever:
 {¶ 22} "* * * (3) All transactions by which:
 {¶ 23} "* * * (e) Automatic data processing, computer services, or electronic information services are to be provided for use in business when the true object of the transaction is the receipt by the consumer of automatic data processing, computer services, or electronic information services rather than the receipt of personal or professional services to which automatic data processing, computer services, or electronic information services are incidental or supplemental. * * *."
 {¶ 24} R.C. 5739.01(Y)(1)(c) defines "electronic information services" as follows:
 {¶ 25} "(c) `Electronic information services' means providing access to computer equipment by means of telecommunications equipment for the purpose of either of the following:
 {¶ 26} "(i) Examining or acquiring data stored in or accessible to the computer equipment;
 {¶ 27} "(ii) Placing data into the computer equipment to be retrieved by designated recipients with access to the computer equipment.
 {¶ 28} "(d) `Automatic data processing, computer services, or electronic information services' shall not include personal or professional services.
 {¶ 29} "(2) As used in divisions (B)(3)(e) and (Y)(1) of this section, `personal and professional services' means all services other than automatic data processing, computer services, or electronic information services[.] * * *"
 {¶ 30} For purposes of this appeal, the definition of "electronic information services" is nearly identical to the definition previously provided under former R.C. 5739.01(Y)(1) for "automatic data processing and computer services."[2] Former R.C. 5739.01(Y)(1) defined automatic data processing and computer services as follows:
 {¶ 31} "(Y)(1) `Automatic data processing and computer services' means: processing of other's data, including keypunching or similar data entry services together with verification thereof; providing access to computer equipment for the purpose of processing data or examining or acquiring data stored in or accessible to such computer."
 {¶ 32} As we find the statute's previous definition of "automatic data processing and computer services" similar to the current definition of "electronic information services" for purposes of this appeal, we find the BTA's decision in PNC Bank, Inc. v. Tracy (1995), BTA No. 93-T-1316 persuasive authority in the instant matter.
 {¶ 33} In PNC Bank, Inc., supra, the BTA was concerned with former R.C. 5739.01(B)(3)(e), which imposed use taxes for services that constituted "automatic data processing or computer services," previously defined above.
 {¶ 34} In that case, a merchant supplied an NDC operator with confidential credit card information. The NDC operator then transmitted this information, via computer to PNC, the bank that issued the credit card.
 {¶ 35} Once PNC received the request, the information was processed and a decision was made whether to authorize the transaction. PNC then transmitted the response back to NDC's computer. In turn, NDC then transmitted the response back to the merchant, which acted accordingly.
 {¶ 36} NDC charged PNC a per transaction fee for forwarding a confidential credit authorization request and relaying PNC's response to the merchant.
 {¶ 37} In PNC Bank Inc., supra, the BTA determined that these transactions are not taxable. In so finding, the BTA reasoned that:
 {¶ 38} "* * * [PNC's] merchant customers do not receive access to [PNC's] computers through NDC. Consequently, the merchant cannot examine or acquire any credit card information stored in or available to [PNC's] computers. Additionally, NDC lacks access to [PNC's] computers. NDC is limited to sending off a specific inquiry and receiving a specific answer. NDC does not determine the credit worthiness of any account, nor can it access [PNC's] computers to inquire into the details of any account. Moreover, since [PNC's] response to a request is not generated until the request is received, NDC has no access to any information stored in [PNC's] computer which can be used by NDC to authorize the transaction. In short, [PNC] performs the actual data processing, while NDC acts as an electronic intermediary, channeling requests to their proper destination and relaying the appropriate response. This service does not provide `access to computer equipment for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment,' and hence does not constitute automatic data processing."
 {¶ 39} We find the holding in PNC Bank, Inc., supra, applicable to the instant matter. As in PNC Bank, Inc., supra, MGI's customers do not receive access to the insurance company's computer through NDC. Therefore, MGI cannot examine or acquire any insurance information stored in or available to the insurance company's computers. Additionally, NDC lacks access to the insurance company's computers. NDC merely transmits a specific inquiry and receives a specific answer. NDC does not determine the eligibility of coverage, nor can it access the insurance company's computers to inquire into the details of the coverage. Moreover, since the insurance company's response to a request is not generated until the request is received, NDC has no access to any information stored in insurance company's computer which can be used by NDC to authorize insurance coverage. This service does not provide "access to computer equipment by means of telecommunications equipment for the purpose of examining or acquiring data stored in or accessible to such computer equipment." Therefore, the services provided by NDC do not constitute "electronic information systems," and thus, are not services subject to use tax. Consequently, the Tax Commissioner's determination with respect to these transactions is unreasonable and unlawful and must be reversed.
 {¶ 40} Our determination as to MGI's first and second assignments of error are dispositive of this appeal. Thus, we decline to address its remaining assignments of error[3] as moot. App.R. 12(A)(1)(c). Accordingly, this matter is reversed.
Judgment reversed.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] The services provided by these two companies are substantially similar, rendering their taxability the same. Hence, we will refer to these services providers collectively as "NDC."
[2]In 1993, R.C. 5739.01(B)(3)(e) was amended to include "electronic information services" as one of the transactions subject to taxation. Previously,"automatic data processing and computer services" were the only services listed as taxable.
Additionally, that same year, R.C. 5739.01(Y)(1) was amended to include a definition of "electronic information services." This definition included a portion of the definition previously provided for "automatic data processing and computer services" with minor changes.
[3] "III. The Board's decision is against the manifest weight of the evidence because the authorizations received from NDC and Envoy were personal services for the customer and simply sent to MGI, as agent for customers, and the authorizations were not provided for use in MGI's business, and thus, did not constitute an electronic information services as required by R.C. 5739.01(Y)(1)(c)."
"IV. The transactions are not electronic information services as described in R.C. 5739.01(Y)(1)(c) or otherwise taxable services."